## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **BYD COMPANY LTD.**, | ) |
|  | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 1:20-cv-03458-TNM |
|  | ) |
| **ALLIANCE FOR AMERICAN** | ) (Oral Hearing Requested) |
| **MANUFACTURING; SCOTT NORMAN** | ) |
| **PAUL; CATHALIJNE ADAMS, AND** | ) |
| **MATTHEW MCMULLAN**, | ) |
|  | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
|  | ) |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

Charles J. Harder, Esq.
(D.C. Bar No. 1017933)
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (424) 203-1600
CHarder@HarderLLP.com

{00118235;4}

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     FACTS AND PROCEDURAL HISTORY ...........................................................2

III.    DEFENDANTS' SECOND MOTION TO DISMISS SHOULD BE DENIED...........6

     A.  The Amended Complaint Contains Sufficient Allegations To Establish Subject Matter Jurisdiction ........................................................................................6

         1.  Legal Standards ................................................................................6

         2.  The Amended Complaint Specifically And Sufficiently Alleges That BYD Suffered Harm in Excess of the Amount in Controversy ........................8

     B.  BYD HAS STATED A VALID CLAIM.................................................................12

         1.  This Court Has Already Denied Defendants' Rule 12(b)(6) Motion And Should Not Allow It To Be Renewed ...............................................12

         2.  Legal Standards for a Rule 12(b)(6) Motion to Dismiss ................................12

         3.  The Complaint Properly Alleges Actual Malice ............................................13

         4.  The Defamatory Statement in the Press Release Cannot Be Dismissed As Time-Barred ................................................................................20

IV.    CONCLUSION..............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Nat. Ins. Co. v. F.D.I.C.*,
  642 F.3d 1137 (D.C. Cir. 2011) ................................................................................ 6

*Bronner ex rel. American Studies Ass'n v. Duggan*,
  962 F.3d 596 (D.C. 2020) ................................................................................... 5, 8

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ................................................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 13

*Barr v. Clinton*,
  370 F.3d 1196 (D.C. Cir. 2004) ............................................................................ 6

*Bronner v. Duggan*,
  317 F. Supp. 3d 284 (D.D.C. 2018) ...................................................................... 7

*Clyburn v. News World Commc'ns, Inc.*,
  903 F.2d 29 (D.C. Cir. 1990) .............................................................................. 14

*Curtis Pub. Co. v. Vaughan*,
  278 F.2d 23 (D.C. Cir. 1960) .............................................................................. 18

*Fridman v. Bean LLC*,
  2019 WL 231751 (D.D.C. Jan. 15, 2019) ...................................................... 13, 14

*Gustave-Schmidt v. Chao*,
  226 F. Supp. 2d 191 (D.D.C. 2002) .................................................................... 14

*Harris v. D.C. Water & Sewer Authority*,
  791 F.3d 65 (D.C. Cir. 2015) .............................................................................. 13

*Herbert v. National Academy of Sciences*,
  974 F.2d 192 (D.C. Cir. 1992) .............................................................................. 8

*Hi-Tech Pharm., Inc. v. Hahn*,
  2020 WL 3498588 (D.D.C. Jun. 29, 2020) ........................................................... 6

*Jankovic v. Int'l Crisis Grp.*,
  494 F.3d 1080 (D.C. Cir. 2007) .......................................................................... 21

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*,
    402 F.3d 1249 (D.C. Cir. 2005) ........................................................................6

*Kaelin v. Globe Communications Corp.*,
    162 F.3d 1036 (9th Cir. 1998) ....................................................................18, 19

*Kaspersky Lab, Inc. v. Department of Homeland Security*,
    909 F.3d 446 (D.C. Cir. 2018) ....................................................................13, 20

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287 (D.C. Cir. 1988) ......................................................................16

*Loughlin v. United States*,
    393 F.3d 155 (D.C. Cir. 2004) ..........................................................................6

*Martin v. Gibson*,
    723 F.2d 989 (D.C. Cir. 1983) ..........................................................................7

*Masson v. New Yorker Magazine, Inc.*
    501 U.S. 496 (1991) ........................................................................................16

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) ........................................................................18

*National Security Archive v. C.I.A.*,
    584 F.Supp.2d 144 (D.D.C. 2008) ..................................................................12

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*,
    247 F. Supp. 3d 76 (D.D.C. 2017) ..................................................................19

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) (*Parisi III*) ............................................17

*Potts v. Howard University Hospital*,
    598 F. Supp. 2d 36 (D.D.C. 2009) ..................................................................21

*Q Int'l Courier, Inc. v. Seagraves*,
    1999 WL 1027034 (D.D.C. Feb. 26, 1999) ....................................................18

*QNE Int'l, Inc. v. Haar Industries*,
    1988 WL 110605 (D.D.C. Oct. 11, 1988) ........................................................7

*Rosenboro v. Kim*,
    994 F.2d 13 (D.C. Cir. 1993) ............................................................................7

*Sickle v. Torres Advanced Enterprise Solutions, L.L.C.*,
    884 F.3d 338 (D.C. Cir. 2018) ........................................................................20

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ...........................................................................13

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) .................................................................................................7

*Szymkowicz v. Frisch*,
  2020 WL 4432240 (D.D.C. Jul. 31, 2020) ..........................................................5, 6

*Washington Alliance of Technology Workers v. U.S. Department of Homeland
  Security*,
  892 F.3d 332 (D.C. Cir. 2018) ................................................................................2

*Wright v. Foreign Service Grievance Board*,
  503 F. Supp. 2d 163 (D.D.C. 2007) .......................................................................7

*Zimmerman v. Al Jazeera*,
  246 F. Supp. 3d 257 (D.D.C. 2017) ......................................................................14

**Statutes**

Federal Rule of Civil Procedure 12(b) .......................................................................11

Federal Rule of Civil Procedure 12(b)(1) ...................................................................6

Federal Rule of Civil Procedure 12(b)(6) ...............................................12, 13, 14, 19, 20, 21

Federal Rule of Civil Procedure 12(d) ......................................................................13

Federal Rule of Evidence 801 ....................................................................................11

28 U.S.C. § 1332(a) ...................................................................................................7

## I.     INTRODUCTION

Plaintiff BYD Company Ltd. ("BYD") was injured by extremely defamatory statements published by Defendants, giving rise to this law suit.  These defamatory statements included the false claim that BYD was "profiting" from forced labor, and the false claim that BYD, a private company, is controlled by the Chinese government.  These defamatory statements, disseminated publicly, have done immense damage to BYD.

In response to BYD's suit, Defendants initially filed their first motion to dismiss that attempted to throw everything up on the wall, in the hopes that something would stick.  The Court found only one argument meritorious: that BYD did not allege its damages with sufficient specificity to satisfy the amount in controversy requirement of diversity jurisdiction.  The Court granted that portion of Defendants motion to dismiss with leave to amend, **and denied the remainder of Defendants' arguments**.

BYD then amended its Complaint.  In doing so, it alleged the loss of three specific contracts lost as a result of Defendants' defamatory statements at issue.  Those three lost contracts alone total more than $200 million in value, *i.e.*, in excess of the $75,000 threshold necessary to invoke diversity jurisdiction.  Defendants, rather than now answering the Amended Complaint, which easily satisfies the "amount in controversy" requirement, have filed a second motion to dismiss.  This second motion not only incredibly asserts that alleging the loss of more than $200 million in contracts is not good enough to satisfy the $75,000 amount in controversy requirement, but also purports to renew all the other grounds for a motion to dismiss that this Court already denied the first time around.

BYD's Amended Complaint, by alleging the loss of more than $200 million in contracts, amply addresses the issue of subject matter jurisdiction that was of concern to this Court.  With

respect to the other issues raised by Defendants, this Court denied the original motion to dismiss

and Defendants offer no grounds for reconsideration of the Court's order.  That is reason enough

for the motion to be denied.  If Defendants' improper purported renewal of those grounds is

considered at all, they should be denied again:  BYD sufficiently alleges actual malice, and

Defendants' statute of limitations argument is reliant on materials outside the scope of the

pleadings that cannot be considered on a motion to dismiss.

## II.    FACTS AND PROCEDURAL HISTORY[1]

BYD is one of the world's largest producers and suppliers of electric vehicles including

electric cars, buses, trucks and forklifts, as well as solar panels, lithium batteries, and protective

masks and equipment, among many other innovative, important and useful products.  *Amended

Complaint* ¶ 1.  BYD is based in the People's Republic of China.  *Id.*  Warren Buffet's company,

Berkshire Hathaway, is a major investor in BYD.  *Id.*  In 2020, BYD won a contract to supply

the State of California with $1 billion worth of masks to protect its nurses, doctors, caregivers,

first responders and other frontline personnel during the COVID-19 global pandemic, and has

been fulfilling that contract for the past several months.  *Id.*

On March 3, 2020, Defendant Alliance for American Manufacturing ("AAM") published

a story written by Defendant Adams entitled "Some of the World's Biggest Brands Depend on

Forced Labor in China" claiming that BYD "Depend[s] on Forced Labor in China" and "profit[s]

from this forced labor" ("Forced Labor Story").  *Amended Complaint* ¶¶ 3, 19, 25.  These

statements were, and are, completely false.  *Amended Complaint* ¶¶ 3, 19, 29.  The Forced Labor

Story purports to be a description of the "ASPI Report," a report from a non-governmental

---

[1] "The allegations of the complaint are generally taken as true for purposes of a motion to dismiss."  *Washington Alliance of Technology Workers v. U.S. Department of Homeland Security*, 892 F.3d 332, 338-39 (D.C. Cir. 2018).

organization in Australia published on or about March 1, 2020, entitled "Uyghurs for Sale: 'Re-education,' forced labour and surveillance beyond Xinjiang." *Amended Complaint* ¶¶ 3, 15, 19. However, the ASPI Report merely stated that BYD had business dealings with a company (Dongguan) that happens to own a subsidiary (Hubei) that allegedly used forced labor. *Amended Complaint* ¶¶ 3, 17-18. The ASPI Report does *not* allege that BYD had any dealings whatsoever with the subsidiary, Hubei. *Complaint* ¶ 19. BYD, in fact, has not had *any* business dealings with Hubei. *Amended Complaint* ¶ 18. These two statements were made with actual malice because the contents of the ASPI Report were well known to the AAM and Defendant Adams at the time of publication. *Amended Complaint* ¶¶ 20, 27. In other words, they knew that the ASPI Report did not allege that BYD had any dealings Hubei, the company that allegedly used forced labor, yet Defendants Adams and AAM still published these false, defamatory and very harmful statements about BYD.

The Complaint also alleges that on May 20, 2020, AAM published a story by Defendant McMullan with the headline: "California has a $1 Billion Contract for PPE with BYD, a Company Controlled by the Chinese State" (the "State Control Story"). *Amended Complaint* ¶¶ 4, 21, 34. In addition, AAM published an undated press release entitled, "Congress Must Act After New Evidence Links CRRC and BYD to Chinese Government and Military" (the "Press Release"). *Amended Complaint* ¶¶ 4, 22, 34. The Press Release contains the statement from Defendant Paul, speaking on behalf of AAM, that "Lawmakers now have irrefutable evidence that CRRC and BYD are simply an arm of China's military and government." *Amended Complaint* ¶¶ 4, 22, 34. These were false statements of fact, as well. *Amended Complaint* ¶¶ 4, 21-22. BYD is a private corporation, which is *privately* owned and controlled; it is not "controlled by" or an "arm of" either China's military or its government. *Amended Complaint* ¶¶

4-5, 21-22.  These statements also were made with actual malice.  *Amended Complaint* ¶¶ 23, 27, 30, 35.  Extensive public information has confirmed that BYD has private ownership, backed by Warren Buffett, and is not state-owned by the Chinese government.  *Amended Complaint* ¶¶ 1, 22-23.

The statements made by Defendants have occurred in the larger context of extensive evidence that Defendants organization exists for the xenophobic purpose of opposing non-US manufacturers and their products*Amended Complaint* ¶¶ 2, 23.  Defendants engage in particularly aggressive acts of discrimination against Asian companies. Defendants routinely spread mistruths in an effort to encourage others to further perpetuate their discrimination against non-US companies, including BYD, and impede those companies' ability to fairly compete in the marketplace for supply contracts in the United States.  *Amended Complaint* ¶¶ 1-2, 22-23. Ultimately, such discriminatory conduct hurts the consumer: states, municipalities and other governmental entities that would otherwise buy BYD's top quality, all-electric buses and other vehicles, and the citizens of such cities, counties and states who ultimately pay for the vehicles that are purchased.

On February 1, 2021, Defendants moved to dismiss the Complaint, arguing (1) that it failed to allege damages in excess of $75,000, and thus failed to establish subject matter jurisdiction; (2) that it failed to allege actual malice; (3) that BYD's claims with respect to one of Defendants' press releases were time-barred; and (4) that DC's anti-SLAPP law should be applied to this action and Defendants should be awarded attorney's fees ("*First Motion to Dismiss*").  [Dkt 7-1]

On April 21, 2021, the Court granted the First Motion to Dismiss in part and denied it in part.  [Dkt 21]  The Court held that Defendants were correct that BYD failed to specifically

allege the amount in controversy for purposes of subject matter jurisdiction, analogizing BYD's

complaint to *Bronner ex rel. American Studies Ass'n v. Duggan*, 962 F.3d 596 (D.C. 2020), and

*Szymkowicz v. Frisch*, 2020 WL 4432240 (D.D.C. Jul. 31, 2020), cases where the plaintiffs had

failed to allege they were "denied tenure, promotions or other prestigious honors" (*Bronner*) or

"did not... assert that [they] had lost clients" (*Szymkowicz*).

However, this was the *only portion* of the First Motion to Dismiss that was granted, and

did so with leave to amend.  The Court specifically *denied* the remainder of the motion to

dismiss and did not grant Defendants leave to renew it.  *April 21, 2021 Order* at 8.

On May 21, 2021, BYD filed a timely amended Complaint, adding the following

allegations:

> 24.    BYD suffered extensive, specific damages as a result of the Defendants'
> statements. For instance, BYD has not been able to complete two contracts to sell
> electric buses to two major urban transit companies in the United States. The
> delays have resulted from the transit companies' reticence to sign a contract with
> BYD as a direct result of Defendants' campaign of defamatory statements
> identified herein. BYD does not name these parties because it still hopes to
> complete the contracts despite Defendants' publication of defamatory statements.
> The total value of these potential contracts is more than $160 million, and even if
> those contracts are eventually completed, BYD has suffered damages as a result
> of the delay.

> 25. BYD also lost a potential contract in 2021 with the Utah Transit Agency,
> which would have netted BYD approximately $44 million dollars; the loss was a
> direct result of Defendants' defamatory statements.

> 26. In addition to these lost and/or stalled projects, other potential customers of
> BYD have indicated to BYD a reticence to deal with the company because of the
> public controversy that resulted from the Defendants' false statements and their
> political repercussions in the United States. BYD has lost business in an amount
> to be proven at trial, but which totals in the hundreds of millions of dollars.

III.   **DEFENDANTS' SECOND MOTION TO DISMISS SHOULD BE DENIED.**

**A. The Amended Complaint Contains Sufficient Allegations To Establish Subject**

   **Matter Jurisdiction.**

   1.   **Legal Standards**

In determining a motion to dismiss for lack of subject matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1), courts must "assume the truth of all material factual allegations

in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all

inferences that can be derived from the facts alleged,' and upon such facts determine

jurisdictional questions." *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)

(internal citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005); *see*

*also Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  The Court may not grant a Rule

12(b)(1) motion to dismiss for lack of jurisdiction unless "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Loughlin v. United States*, 393 F.3d 155, 162–63 (D.C. Cir. 2004) (quoting *Conley v. Gibson*,

355 U.S. 41, 45–46 (1957)).

A court "may consider materials outside the pleadings in deciding whether to grant a

motion to dismiss for lack of jurisdiction[]" under Rule 12(b)(1).  *Jerome Stevens Pharm., Inc. v.*

*Food & Drug Admin.*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).  However, in doing so, "the

court must still 'accept all of the factual allegations in [the] complaint as true[,]'" (*Id.*; *see Hi-*

*Tech Pharm., Inc. v. Hahn*, 2020 WL 3498588, at *3 (D.D.C. Jun. 29, 2020)), and continue to

"afford[] the plaintiff the benefit of all reasonable inferences."  *Szymkowicz v. Frisch*, 2020 WL

4432240, at *3 (D.D.C. July 31, 2020) (internal quotations omitted).

Diversity jurisdiction exists where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  The Supreme Court has reiterated that the test to ascertain whether or not a claim satisfies the threshold dollar amount for diversity jurisdiction is: "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (footnotes omitted); *see also QNE Int'l, Inc. v. Haar Industries*, 1988 WL 110605, at *1 (D.D.C. Oct. 11, 1988) ("Disputes concerning the amount in controversy are decided according to the 'good faith/legal certainty' test set forth in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89 (1938).").  The Supreme Court further elaborated that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *Id.*; *see also Bronner v. Duggan*, 317 F. Supp. 3d 284, 288 (D.D.C. 2018) ("This means that the Court should find jurisdiction at this motion-to-dismiss stage of the proceedings even if it has serious doubts as to the bases for establishing the amount-in-controversy.").  In sum, "…the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction."  *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993); *see also Martin v. Gibson*, 723 F.2d 989, 991, 993 (D.C. Cir. 1983) (describing the *St. Paul Mercury* test as "exacting" and "stringent").

The Court, in its order granting the Defendants' First Motion to Dismiss in part and denying it in part, stated the standard as follows:  "BYD 'bears the burden of invoking the court's subject matter jurisdiction.' *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). The Court must accept as true all BYD's factual allegations. *Wright v. Foreign Service Grievance Board*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007).  And BYD receives 'the benefit of all favorable inferences that can be drawn from the alleged facts.' *Id.*  The Court also can consider

'undisputed facts plus the [C]ourt's resolution of disputed facts.' *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)." *April 21, 2021 Order* at 2.

With respect to the allegation of amount of controversy, the Court noted that BYD bears the burden on the issue, but cautioned: "a plaintiff need not provide an exact valuation or detailed breakdown of damages at the outset of litigation, as the claimed sum controls if apparently made in good faith. *Bronner ex rel. American Stud. Ass'n v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938))." *April 21, 2021 Order* at 3-4.

The Court further stated that "[m]issing from the complaint are any facts showing how the alleged defamatory statements were highly damaging to BYD's business.  In a parallel defamation case, for example, BYD asserted that an article caused substantial damage to [its] business reputation and business dealings because '[s]everal third parties ha[d] already raised the defamatory statements . . . as a reason to delay or terminate contemplated business transactions with BYD.' [citing Complaint in *BYD Co. v. VICE Media LLC*, 20-cv-03281-AJN].  No such allegations appear in this complaint. BYD is obligated to produce support for [its] damages claims at this jurisdictional juncture.  It cannot simply vaguely assert . . . economic and reputational damage to survive.  BYD 'failed to explain in any concrete terms how' AAM's alleged defamatory statements harmed it.  This is fatal to its complaint."

## 2.     The Amended Complaint Specifically And Sufficiently Alleges That BYD Suffered Harm in Excess of the Amount in Controversy.

BYD has remedied the defect that the Court found in the original Complaint.  BYD now alleges: "BYD suffered extensive, specific damages as a result of the Defendants' statements. For instance, BYD has not been able to complete two contracts to sell electric buses to two major

urban transit companies in the United States. The delays have resulted from the transit companies' reticence to sign a contract with BYD as a direct result of Defendants' campaign of defamatory statements identified herein. BYD does not name these parties because it still hopes to complete the contracts despite Defendants' publication of defamatory statements.  The total value of these potential contracts is more than $160 million, and even if those contracts are eventually completed, BYD has suffered damages as a result of the delay." *Amended Complaint* ¶ 24.

The Amended Complaint continues:  "BYD also lost a potential contract in 2021 with the Utah Transit Agency, which would have netted BYD approximately $44 million dollars; the loss was a direct result of Defendants' defamatory statements." *Amended Complaint* ¶ 25.

The Amended Complaint further continues:  "In addition to these lost and/or stalled projects, other potential customers of BYD have indicated to BYD a reticence to deal with the company because of the public controversy that resulted from the Defendants' false statements and their political repercussions in the United States. BYD has lost business in an amount to be proven at trial, but which totals in the hundreds of millions of dollars." *Amended Complaint* ¶ 26.

These are specific allegations of an amount in controversy in excess of $200 million. These allegations more than satisfy the standard for subject matter jurisdiction.  The Court itself held that BYD is allowed "latitude" in its jurisdictional allegations. *April 21, 2021 Order* at 7. BYD nonetheless has provided specific allegations of lost contracts and business.  The amount in controversy requirement is met.

Defendants' response to this specific amended pleading is to misrepresent it.  For instance, Defendants say "[t]hese allegations do not provide facts showing how the alleged

defamatory statements were 'highly damaging' to BYD's 'business'". *Second Motion to Dismiss* at 8.  In fact, the new allegations in the Amended Complaint show how Defendants' defamatory statements caused BYD over $200 million in lost contracts.

Defendants state that "BYD does not allege that anyone associated with the competitive bidding process ever viewed or even knew about, let alone considered or relied upon, Defendants' purported statements". *Id.*  Defendants also claim that BYD does not "link[]" the lost contracts to the defamation and that none of the potential customers "cited to" Defendants' defamatory statements. *Id.* at 11.  This is completely false, the Amended Complaint provides: "other potential customers of BYD have indicated to BYD a reticence to deal with the company because of the public controversy that resulted from the Defendants' false statements and their political repercussions in the United States". *Amended Complaint* ¶ 26.  The Amended Complaint also states: "BYD has not been able to complete two contracts to sell electric buses to two major urban transit companies in the United States. The delays have resulted from the transit companies' reticence to sign a contract with BYD as a direct result of Defendants' campaign of defamatory statements identified herein". *Amended Complaint* ¶ 24.  Defendants are pretending that these specific facts and lost contracts have not been pleaded, but they have been, and Defendants' attempt to mislead this Court on this point should be rejected.

Without any basis for showing a lack of subject matter jurisdiction, Defendants are left to make arguments about the weight of damages evidence that may only be decided by a jury. Defendants argue "BYD asks the Court to infer that BYD did not receive these electric bus contracts because of two blog posts and a press release".  Whether or not Defendants' blog posts and press releases reached their target audience (which, presumably, they were intended to

reach) will be a subject of discovery and proof at trial.  It would be entirely improper for this kind of factual issue to be resolved in a pleadings motion.

Defendants also resort to hearsay that would not even be admissible at a trial, let alone in a Rule 12(b) motion to dismiss.  Defendants claim that the Utah Transit Agency publicly said that it selected a competitor for a different reason.  *Second Motion to Dismiss* at 13.  However, even in a jury trial, the UTA's out of court statement about the reason it selected a competitor would be inadmissible hearsay offered for the truth of the matter asserted.  Fed. R. Evid. 801.  It is not cognizable here as a basis to dismiss a complaint with prejudice.

Finally, Defendants make the astounding claim that lost business contracts are nothing more than "reputational damage".  In doing so, Defendants both misstate the law and also contradict what they told this Court in their first Motion to Dismiss.  There, Defendants stated "Reputational damages are not recoverable in a corporate plaintiff's defamation case.  Rather, a corporation suing for defamation may only recover actual damages in the form of lost profits." *First Motion to Dismiss* at 12 (citing *Kaspersky Lab, Inc. v. Department of Homeland Security*, 909 F.3d 446, 462 (D.C. Cir. 2018)).  Defendants drew the distinction, supported by case authority, between reputational damages (which Defendants contend are not recoverable) and lost profits (recoverable), in its initial motion.  Now, faced with allegations of lost profits, Defendants make a 180-degree flip-flop and say that BYD's lost contracts are nothing more than a form of reputational damage.

Defendants have no serious argument that BYD's Amended Complaint is insufficient to cure the defects identified by this Court.  Instead, they advance an argument that conflates the merits with subject matter jurisdiction, relies on inadmissible hearsay evidence, and that almost

no conceivable complaint in *any* case could ever meet.  The renewed motion to dismiss based on subject matter jurisdiction should be denied.

## B.  BYD HAS STATED A VALID CLAIM

### 1.  This Court Has Already Denied Defendants' Rule 12(b)(6) Motion And Should Not Allow It To Be Renewed.

The Court's April 21, 2021 Order was clear:  the Court granted Defendants' motion on the **sole** ground of subject matter jurisdiction, and denied the remainder.  *April 21, 2021 Order* at 8.  All of the issues Defendants present now (*i.e.,* actual malice, statute of limitations) were extensively briefed and presented to the Court, and the Court denied the motion.

"A motion for reconsideration should be granted only if the court 'finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *National Security Archive v. C.I.A.*, 584 F.Supp.2d 144, 146 (D.D.C. 2008) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Defendants have shown none of these.  There has been no intervening change in controlling law (i.e., U.S. Supreme Court or D.C. Circuit authority on actual malice, or D.C. local law on the statute of limitations) since the first motion.  This is a motion to dismiss, so "new evidence" is not an issue. And there was no "clear error" or "manifest injustice" (and Defendants have not even attempted to invoke that exception.  In fact, **Defendants virtually repeat the exact arguments they made in the First Motion to Dismiss.**  The Court has already ruled on these issues, and that is the end of the matter.

### 2.  Legal Standards for a Rule 12(b)(6) Motion to Dismiss.

Should the Court reach the merits of Defendants' Rule 12(b)(6) motion, a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint by raising the question of whether or

not the complaint contains "sufficient factual matter, *accepted as true*, to state a claim to relief that is *plausible* on its face." *Harris v. D.C. Water & Sewer Authority*, 791 F.3d 65, 68 (D.C. Cir. 2015) (emphasis added) (internal quotation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When evaluating a Rule 12(b)(6) motion, the "court must accept as true all of the allegations contained in a complaint[,]" *Harris*, 791 F.3d at 68 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678), and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged". *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation omitted).

"As a general rule, 'Federal Rule of Civil Procedure 12(d) forbids considering facts beyond the complaint in connection with a motion to dismiss the complaint for failure to state a claim.'" *Kaspersky Lab*, *supra*, 909 F.3d at 464 (citing *United States ex rel. Shea v. Cellco Partnership*, 863 F.3d 923, 936 (D.C. Cir. 2017).).

### 3.    The Complaint Properly Alleges Actual Malice.

 "At this stage [the Court's] task is only to 'determine as a threshold matter whether' the statements identified by plaintiffs are 'capable of being construed as defamatory.'" *Fridman v. Bean LLC*, 2019 WL 231751, at *3 (D.D.C. Jan. 15, 2019) (quoting *Ning Ye v. Holder*, 644 F.Supp.2d 112, 118 (D.D.C. 2009) (internal quotation marks omitted).  The Court's "inquiry, therefore, is limited; [it] may only find as a matter of law that the statements are not actionable if 'the publication is not reasonably capable of any defamatory meaning and cannot be reasonably

understood in any defamatory sense.'"  *Fridman*, 2019 WL 231751, at *3 (quoting *Weyrich v.*

*The New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001)).

This motion is a challenge to the pleadings that should be limited to the facts in the

Complaint.[2]  At this stage, a plaintiff need merely allege a plausible theory of actual malice: "the

complaint's allegations [must] support a reasonable inference that [the defendant] in fact

entertained serious doubts as to the truth".  *Zimmerman v. Al Jazeera*, 246 F. Supp. 3d 257, 280

(D.D.C. 2017).[3]  The Complaint meets this standard.

With respect to the Forced Labor Story:  The theory of actual malice pleaded is that

Defendants Adams and AAM had the ASPI Report in their possession, obviously read it, and yet

Defendants Adams and AAM knowingly or recklessly wrote and published two statements that

completely misstated the conclusions of the ASPI Report.  These allegations easily clear the

pleading standard.  It is an entirely reasonable inference that Defendants Adams and AAM

misstated the conclusions of the ASPI Report, and entertained serious doubts about the truth of

such statements.  *See Clyburn v. News World Commc'ns, Inc.*, 903 F.2d 29, 33 (D.C. Cir. 1990)

("[P]roof [of actual malice] may take the form of circumstantial evidence, such as the existence

of 'obvious reasons to doubt the veracity of the informant or the accuracy of his reports' or the

inherent improbability of the reports.") (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732

---

[2] As in the First Motion, BYD objects to any consideration of Defendants' exhibits on the motion
to dismiss.  "In deciding whether to dismiss a claim under *Rule 12(b)(6)*, the Court *may only
consider* the facts alleged in the complaint, documents attached as exhibits or incorporated by
reference in the complaint, and matters about which the Court may take judicial
notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (emphasis added).
Defendants' Exhibits are *not* documents attached as exhibits or incorporated by reference in the
Complaint.  Moreover, Defendants cite no basis that these matters are the proper subjects of
judicial notice.

[3] BYD assumes that it is at least a limited purpose public figure as to the issues raised in the
Complaint.

(1968)).  To conclude otherwise would be to assume Defendants Adams and AAM do not even read their own alleged sources before writing and publishing stories on what those "sources" allegedly say.

Defendants Adams and AAM contend that the Forced Labor Story was a "factual summary" of the ASPI Report, a foreign report that allegedly relied on "reputable sources."  As an initial matter, although unacknowledged by Defendants, the ASPI Report specifically disclaims at the beginning of the report that: "*No person should rely on the contents of this publication* without first obtaining advice from a qualified professional." (Emphasis added). Notwithstanding this clear disclaimer, Defendants did not even accurately describe the contents of this alleged *sole* "source" in their Forced Labor Story.

After the disclaimer, the ASPI Report makes three brief references to BYD, the first two of which are exactly the same.  The first two references to BYD are made as part of a list of companies that are purportedly "directly or indirectly benefiting from the use of Uyghur workers outside Xinjiang through potentially abusive labour transfer programs as recently as 2019."  The third and only other ASPI Report reference to BYD alleges that a company named Dongguan Yidong Electronic Co. Ltd. ("Dongguan") supplies "directly" to BYD, and that an alleged subsidiary of Dongguan, the Hubei Yihong Precision Manufacturing Co. Ltd. ("Hubei"), employed 105 Uyghur workers who were transferred to Hubei, presumably by the Chinese government.  Importantly, **there is no allegation in the ASPI Report that BYD had any relationship whatsoever with Hubei, or that any of the 105 Uyghur workers who supposedly worked for Hubei ever worked on any aspect of BYD's supply chain**.  At most, the ASPI Report would provide support for a claim that BYD did business with Dongguan, and that a subsidiary of Dongguan **unrelated to BYD** (Hubei), used forced labor.  This, of course, is

*not* what Defendants said about BYD.  There is no factual support for Defendants' false claim that BYD "Depend[s] on Forced Labor in China" and "profit[s] from this forced labor[.]"[4]  In short, Defendants' single alleged "reputable source," the ASPI Report, does *not* even include the statements that Defendants made about BYD in the Forced Labor Story.  Accordingly, there is no basis to Defendants' claim that they relied on this single source in good faith.

In addition, Defendants claim that the ASPI Report provides factual citations for each of its claims, and places great emphasis on the fact that the ASPI Report includes endnotes. However, what Defendants fail to acknowledge is that not a single one of the citations or endnotes actually supports Defendants' statements regarding BYD.  This is further support for the proposition that Defendants did not rely in good faith on the ASPI Report when they wrote and published the Forced Labor Story, and in fact entertained serious doubts as to the truth of Defendants' own statements about BYD.  *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988) (holding that a plaintiff can demonstrate the defendant entertained a "high degree of awareness of…probable falsity[]" "[t]hrough the defendant's own actions or statements, the dubious nature of his sources, the inherent improbability of the story or other circumstantial evidence[.]").

---

[4] In its Reply papers on the First Motion to Dismiss, Defendants pointed to language in the ASPI Report stating that BYD was one of 83 companies that "directly or indirectly" profited from forced labor, a vague statement for which the only backup in the report is BYD's relationship with a company which has an unrelated subsidiary accused of using forced labor.  However, even assuming a statement by Defendants that BYD "directly or indirectly" profited from forced labor might have been legally privileged, this is not what Defendants said in the Forced Labor Story.  They said that BYD not only "profits" from forced labor but "depends" on it, and they removed the qualification "directly or indirectly'.  Defendants turned a vague, hard to parse accusation against BYD into a direct accusation that BYD depends on forced labor in manufacturing its products.  They did this deliberately, and this satisfies the standard for actual malice.  *See Masson v. New Yorker Magazine, Inc.* 501 U.S. 496, 516 (1991) (deliberate alteration of a text that materially changes the meaning constitutes actual malice).

Defendants Adams and AAM also attempt to fit this case within the rule that complaints that simply plead the element of actual malice in general terms and without facts are subject to a motion to dismiss.  However, the Complaint here does not do this.  Paragraphs 2-3, 15-23, and 27 articulate specific factual allegations as to how the Defendants acted with reckless disregard for the truth.  Accordingly, BYD alleges factual allegations that the statements at issue were false, thereby sufficiently pleading a plausible theory of actual malice.  *See Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218–19 (D.D.C. 2012) (*Parisi III*) (holding that the plaintiff failed to sufficiently plead actual malice and dismissed the complaint where he "merely allege[d] in a conclusory fashion that the 'defamatory statements were made and published by defendants with knowledge of their falsity or with reckless disregard for their truth[,]'" and because "[t]he complaint contain[ed] <u>no</u> factual allegations, other than the plaintiffs' own assertions that the statements were false," the court held that the plaintiff had "failed to make factual allegations sufficient to 'raise a right to relief above the speculative level[.]'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

<u>With respect to the State Control Story and the Press Release:</u>  The theory of actual malice pleaded is that Defendants AAM, McMullan, and Paul *knew* that BYD is a private corporation, which is privately owned and controlled, and not an "arm" of either China's military or its government.  Nevertheless, Defendants knowingly or recklessly wrote and published the false statements that BYD is "Controlled by the Chinese State" (State Control Story) and "an arm of China's military and government" (Press Release), in an effort to spread mistruths about BYD, a non-US manufacturer, and thereby encourage discrimination against BYD and its products to impede its ability to compete fairly in the marketplace for supply contracts in the United States.  The Complaint pleads specifically that there is extensive information online that

establishes that BYD has private ownership and is not state-owned.  *See McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1510 (D.C. Cir. 1996) ("The Supreme Court held that the evidence supported the jury's finding of actual malice; it was "likely that the newspaper's inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the] charges. Although failure to investigate will not alone support a finding of actual malice ... the purposeful avoidance of the truth is in a different category.") (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)).

Defendants make three arguments in response:  First, they try to contend that the State Control Story is a "non-actionable headline."  Defendants do not deny that the headline is defamatory.  Instead, Defendants cite a district court opinion addressing a motion for summary judgment.  *See Q Int'l Courier, Inc. v. Seagraves*, 1999 WL 1027034, at *1 (D.D.C. Feb. 26, 1999).  However, *Seagraves* merely states that "headlines are to be construed in conjunction with their accompanying articles." *Id.* at *4. As noted by the D.C. Circuit, "Newspaper headlines, if defamatory and if they do not fairly and accurately reflect the gist of the text, are not privileged, even though the story if read in its entirety would not be misleading." *Curtis Pub. Co. v. Vaughan*, 278 F.2d 23, 29 (D.C. Cir. 1960).

A classic example of how a headline can be defamatory even if it were attached to a non-defamatory story is *Kaelin v. Globe Communications Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998).  Kato Kaelin, who gained fame as a witness in the O.J. Simpson murder case (he lived in Simpson's guest house when the murders took place), was the subject of a headline in the *Globe*: "Kato Kaelin:  Cops Think He Did It!".  The article said that he was being investigated for perjury and withholding information from the police, not the murders.  But the headline, "He Did It!" implied he was being investigated for the murders.  The Ninth Circuit held the headline was

actionable and reversed a grant of summary judgment.  As in *Kaelin*, in the case at bar, the headline "California has a $1 Billion Contract for PPE with BYD, a Company Controlled by the Chinese State" is defamatory; AAM cannot use the text of the story to argue that it is not defamatory as a matter of law.

Second, like the Forced Labor Story, Defendants attempt to claim that the statements were based on earlier statements made by someone else in a previously published document by an allegedly reputable source. Defendants do not cite to any legal authority for the proposition that the mere fact some other author said the same thing as the defamatory publication is enough to dismiss a claim *at the pleadings stage* for failure to plead actual malice.  If this were true, then any defamation defendant who knew his statement was false at the time of publication could simply point to some other similar public statement and thereby defeat liability.  That certainly is not the standard, and is why Defendants cannot cite to any legal authority supporting this position.

The purported previously published document, referred to by Defendants as the "Radarlock Report," may be evidence that the Defendants can present to a jury to rebut evidence of actual malice or pursuant to a motion for summary judgment, once it is properly authenticated and if Defendants actually relied on it.  But it has no place in a Rule 12(b)(6) proceeding where the plaintiff's allegations are taken as true.[5]

---

[5] This document is not referenced or incorporated in the Complaint, and therefore is not properly before this Court.  Defendants refer to *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F. Supp. 3d 76, 108–09 (D.D.C. 2017) to allegedly support the proposition that this Court can accept evidence from the "Wayback Machine".  *Paleteria* did not address a motion to dismiss and thus does not support Defendants' argument.  *See id*. at 82. Instead, at issue were *post-trial* motions challenging a decision of the Trademark Trial and Appeal Board (TTAB) following a 13-day bench trial.  *Id*.

Third and finally, like the Forced Labor Story, Defendants attempt to fit this case within the rule that Complaints that simply recite the element of actual malice are subject to a motion to dismiss. To reiterate, the Complaint does not do this. Paragraphs 2, 4, and 20-23 articulate *specific* factual allegations regarding how the Defendants acted with reckless disregard for the truth as to the State Control Story and Press Release.

### 4. The Defamatory Statement in the Press Release Cannot Be Dismissed As Time-Barred.

Defendants concede that the allegation in the Press Release that BYD is **"**simply an arm of China's military and government" is "undated." *Complaint* ¶ 21. Pointing to matters outside the record, Defendants contend the Press Release was published on October 25, 2019, and BYD therefore is barred from seeking redress under the one-year statute of limitations for defamation actions.[6] Defendants' argument should be disregarded for two reasons.

First, the Complaint references an "undated" Press Release, and thus, the Complaint does not plead facts to establish the Defendants' claim that it is time-barred. "A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.... Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss

---

In their reply in support of the First Motion to Dismiss, Defendants made the novel argument that the rule against the use of unverified outside materials on a motion to dismiss is solely about "surprise," and that BYD was not "surprised" by the Radarlock Report. Defendants are incorrect. The rule against use of such materials arises from the fact the Court cannot weigh evidence on a motion to dismiss and must take the allegations of the plaintiff as true. *See Sickle v. Torres Advanced Enterprise Solutions, L.L.C.*, 884 F.3d 338, 344-45 (D.C. Cir. 2018).

[6] Once again, Defendants' attempts to "prove" the date of publication through exhibits go beyond the scope of these proceedings. This Court may not assume facts subject to reasonable dispute in a motion to dismiss. *See Kaspersky Lab*, 909 F.3d at 464 (court's power to judicially notice matters on a motion to dismiss limited to matters not in "reasonable dispute").

a complaint on statute of limitations grounds based solely on the face of the complaint.... Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred." *Potts v. Howard University Hospital*, 598 F. Supp. 2d 36, 38-39 (D.D.C. 2009).

Defendants do not meet this standard.  The face of the Complaint does not disclose a valid statute of limitations defense.  Defendants are attempting to litigate factual issues.  It would be erroneous to conclude that the claim is "conclusively time-barred".

Defendants allege "three objective markers" in their attempt to demonstrate the Press Release was published on October 25, 2019.  None of the alleged markers are valid.

Defendants claim the "Press Release is one of the fulcrums of Plaintiff's Complaint and is incorporated by reference[] therein."  No authority is cited to support this representation. Defendants go so far as to claim that a document containing the alleged "source code" also is the proper subject of judicial notice.  No authority is cited to support this proposition either. Defendants allege that certain actions were taken to establish the date of publication.  However, these alleged actions are not in the record, and also are not supported by any testimony.

<u>Second</u>, even assuming arguendo it were proper to point to matters outside the record to dismiss a claim at the pleadings stage, *and* no questions of accuracy or uncertainty exist as to the October 25, 2019 date of publication, Defendants still do not take into account the possibility that the Press Release was subsequently modified in a manner to qualify as a republication. *See Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007). Their unsupported attempt to claim the Press Release "has not been modified since [October 25, 2019]" does not negate this prospect.  It is for this very reason that the plaintiff's allegations are taken as true in a Rule 12(b)(6) proceeding.

Accordingly, Defendants motion to dismiss regarding the Press Release in the Second Cause of Action should be denied.[7]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Second Motion to Dismiss should be denied in its entirety.  Alternatively, if any portion of the motion is granted, it should be granted with leave to amend.


Dated: June 25, 2021                          Respectfully submitted,

                                    By: /s/ Charles J. Harder
                                         Charles J. Harder, Esq.
                                         (D.C. Bar No. 1017933)
                                         HARDER LLP
                                         132 South Rodeo Drive, Fourth Floor
                                         Beverly Hills, California 90212
                                         Telephone: (424) 203-1600
                                         CHarder@HarderLLP.com

---

[7] Defendants make no argument why they are asking for dismissal "with prejudice".  If the Court is inclined to dismiss any portion of the Complaint, the Court should grant leave to amend so that BYD can make additional allegations.  As the Court held in its April 21, 2021 Order, dismissal with prejudice is only permissible where further amendment would be futile.  *April 21, 2021 Order* at 8 n. 4.  Defendants have not made this showing.